UNITED STATES NORTHERN DISTRICT
NORTHERN DISTRICT OF NEW YORK

ROBERT J.  MONICA

                              Plaintiff,

-against-                                                          7:06-CV-1414 (LEK)

MICHAEL J. ASTRUE, *Commissioner*
*of  Social Security*,

                              Defendant.
_____

## MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

In May of 2004, Plaintiff Robert Monica ("Plaintiff") protectively filed an application for

Supplemental Security Income ("SSI") benefits under the Social Security Act ("the Act").  Plaintiff

asserts an onset date for his disability as the date on which he protectively applied for SSI benefits at

the beginning of his hearing.  The Commissioner of Social Security ("the Commissioner") denied

Plaintiff's application for lack of disability.

Plaintiff, through his attorney, commenced this action on November 22, 2006.  (Dkt.  No.  1).

Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§

405 (g) and 1383 (c)(3).

## II.    BACKGROUND

### A.  Plaintiff's history

Plaintiff was born on December 24, 1967; he was thirty-seven years old at the time of the

ALJ's determination.  R. 50.[1]  He has a tenth grade education and did not obtain a GED.  R. 378.

He has worked as a delivery person, auto technician, and a laborer for a construction company.  R.

73, 81.

Plaintiff alleges that he has suffered depressive disorder, intermittent explosive disorder, and

borderline mental retardation since birth, and that he is further limited by disc herniations and

degenerative disc disease in his back.  R. 72, 372-73.  Plaintiff testified that these impairments, and

particularly his inability to control his anger, prevent him from doing all work.  R. 385-86, 397.

Plaintiff has attempted to address his explosive temper, seeing a psychiatrist every three weeks, but

has not been able to control his outbursts and is constantly depressed. R. 399.

Plaintiff claims that his back pain makes him unable to participate in activities of daily life or

perform work.  R. 386-407.  He admits, however, that he has not been treated for his back pain for

approximately five years, is able to lift up to twenty pounds, and can perform many tasks such as

yard work, cooking, etc., as well as drive in a car for short trips.  R. 86-92, 386-407.  Plaintiff has a

history of alcohol and marijuana abuse, but testified that he had not drank alcohol in over a year

prior to his hearing.  R. 137-138, 144, 156, 167, 181-182, 190, 197, 393.  Plaintiff has submitted

various medical records in support of his claims.

Plaintiff was admitted to the Samaritan Medical Center ("SMC") Emergency Room ("ER")

on December 25, 1997, for a mental health examination due to a severe bout of anger and

depression.  R. 103.  This episode followed a violent outburst during which Plaintiff, after losing his

job allegedly as a result of his mental impairments, became intoxicated and punched holes in the

walls of his apartment, resulting in his eviction.  R. 103.

---

[1]  Citations to the underlying administrative record (Dkt. No. 5) are designated as "R."

Plaintiff returned to the SMC ER on February 4, 1998, with complaints of lower back pain. R. 108.  His pain was diagnosed as stemming from a strain or sprain of the lower back muscles.  R. 109.  On September 13, 1998, an x-ray at SMC confirmed degenerative changes at L4-L5.  R. 112. A CT scan showed a moderately large right-sided disc herniation.  R. 113.  Plaintiff was admitted to the SMC ER for lower back pain again on March 17, 1999.  R. 122.

On April 23, 2000, Plaintiff again returned to the SMC ER complaining of depression, stemming from frustration with his back pain.  R. 123-29.  He was diagnosed with depressive disorder and chronic back pain.  R. 128.

Plaintiff received no treatment for his mental health or back pain until March 31, 2004, when he was admitted to the SMC ER for anger issues and appetite and sleeping difficulties.  R. 130-39. This visit followed an incident in which Plaintiff became angry over breaking up with his girlfriend, punched holes in the walls of his apartment, and damaged his possessions.  R. 132.  Recent alcohol use was noted, and his demeanor was described as angry and hostile.  R. 132.  Plaintiff told the attending physician, Dr. Phillip Chafe, that he had a prior history of depression, suicide attempts, involvement with the criminal justice system, and drug and alcohol abuse.  R. 137.  Dr. Chafe diagnosed Plaintiff as suffering from an adjustment disorder with mixed mood/conduct.  R. 134. Plaintiff was directed to follow up with outpatient mental health; the next day he returned to the ER seeking medication to help him sleep.  R. 132, 134.

Plaintiff was admitted to SMC under the care of Dr. Jose Alfano from April 5, 2004 through April 8, 2004 for treatment of "mood disorder, anger and loss of control."  R. 144-56.  Dr. Alfano described Plaintiff as "loud, agitated, angry."  R. 147.  He noted Plaintiff was alert, with good orientation, but displaying limited concentration, attention, and abstract thinking ability.  R. 148.

3

Dr. Alfano diagnosed Plaintiff with depressive disorder, alcohol and marijuana abuse, and personality disorder. R. 144. Upon admission, Plaintiff's Global Assessment of Functioning ("GAF") score was 30, and rose to 55 before he was discharged. R. 144. Overall, his various social skills and levels of intellectual functioning were noted as limited, fair, impaired, and, with respect to his understanding of interpersonal relations and emotional issues, "very unsophisticated." R. 144-145. Dr. Jose Alfano noted that the medication he prescribed appeared to stabilize Plaintiff. R. 144-45. In his discharge summary, Dr. Alfano noted that Plaintiff "was ambulatory and able to return to work." R. 145. Plaintiff was asked to refrain from all drug and alcohol use and resume a regular diet. R. 145. He was prescribed medication and referred to Mercy Center for Behavioral Health and Wellness ("Mercy Behavioral"). R. 145-46.

On April 15, 2004, Plaintiff followed up with Mercy Behavioral. R. 156. Carol Strahm noted he was threatening suicide. R. 156. Strahm also noted Plaintiff was "very depressed-very angry . . . . [d]ifficult to engage - [followed] no steady diet - eat[ing] every few days." R. 156. Plaintiff reported that he never drank alcohol but used marijuana "as much as [he] can." R. 158. Plaintiff was diagnosed with depressive disorder. R. 158. Upon examination, he was described as disheveled, angry, tearful, distractable, slow, impoverished, and possessing a "fair" capacity for concentration. R. 159. His prognosis was "fair." R. 159.

Five days later, Plaintiff returned to Mercy Behavioral. He was directed to reschedule his appointment because he was "rude," "belligerent," "posturing," "threatening," and cursed throughout his appointment. R. 294. Plaintiff angrily left, saying he would never return and did not need help. R. 295. On April 27, 2004, however, Plaintiff returned to Mercy Behavioral for a psychological assessment. R. 165. He told Dr. Lisa Littell, the prescribing therapist, that he felt like

4

crying all the time and was abused by his parents as a child. R. 165-68. Dr. Littell found Plaintiff's concentration, judgment, insight, and impulse control to be poor, and his mood irritable, angry, and labile. R. 166. Dr. Littell diagnosed Plaintiff with intermittent explosive disorder, cannabis abuse, dysthymic disorder, personality disorder, antisocial personality disorder, and a herniated disc. R. 167. He was prescribed additional medication.

Plaintiff returned for a follow up visit at Mercy Behavioral on May 4, 2004. R. 291. Plaintiff related to Sara Cramer, his counselor, that the prescribed medication had not helped any of Plaintiff's symptoms and he was "very negative." R. 292. Plaintiff's prescription was changes and apparently the new medication helped him sleep. R. 289.

On May 5, 2004, Dr. Littell wrote that, due to his intermittent explosive disorder, Plaintiff was "unable to work at this time." R. 169. She advised Plaintiff that he should apply for SSI; Plaintiff filed his application for SSI benefits on May 7, 2004. R. 61.

Dr. Littell completed a medical questionnaire about Plaintiff on June 23, 2004. R. 172-78. Dr. Littell reasserted her diagnosis of intermittent explosive and dysthymic disorders, and she noted Plaintiff's symptoms of getting angry very easily, irritability, and sadness. R. 172. She also documented Plaintiff's suicide attempts in the past (before the medical record in this case), and his problems in getting along with supervisors and co-workers; she further noted Plaintiff had no difficulty with job performance and was able to perform certain daily activities. R. 175. Dr. Littell related that Plaintiff tended to avoid crowds and did not like being around people. R. 175-76. Additionally, Dr. Littell noted that Plaintiff told him he could only sit for 30-45 minutes at a time due to his lower back pain. R. 175.

On July 6, 2004, a consultative psychological examination was performed at the request of

the State agency by Jeanne Shapiro, Ph.D.  R. 179-83.  Plaintiff related his problems with depression, anger, and how twice a year he "flies off the deep end" and punches his vehicles.  R. 180.  Additionally, he stated he was arrested for assault on multiple occasions between the time he was seventeen years old and the year 2004, but later admitted his last assault arrest occurred "quite a few years ago."  R. 181.  Dr. Shapiro described his presentation, manner of relating, and social skills as "marginally adequate."  R. 181.  He was able to count, perform simple calculations, serial 3s, and his recent and remote memory skills were intact.  R. 181.  Dr. Shapiro also reported Plaintiff was capable of understanding and following directions for simple and some complex tasks.  R. 181.  Additionally, Dr. Shapiro observed Plaintiff was capable of "maintaining concentration for tasks . . . regularly attend a routine and maintain a schedule if he so desires . . . capable of learning new tasks . . . capable of making some appropriate decisions . . . appears to have difficulty adequately dealing with stress."  R. 182.

Plaintiff told Dr. Shapiro that he was unable to work because he was receiving mental health services and had difficulty getting along with people.  R. 179.  Plaintiff admitted, however, that he believed that he could work in a job which did not involve him being around other people.  R. 182.  Plaintiff reported that his treatment had improved his symptoms, though they still persist, and that he experiences significant anger problems approximately twice per year.  R. 180.  Dr. Shapiro diagnosed him with intermittent explosive disorder, depressive disorder, and marijuana abuse in early remission.  R. 182.

On July 6, 2004, Plaintiff underwent another x-ray, which confirmed disc space narrowing and straightening of the lordotic curve.  R. 184.  Later that day, at the request of the State agency, he was seen by Dr. Kalyani Ganesh, M.D. for a consultative physical examination.  R. 185-88.  Dr.

Ganesh reported Plaintiff was able to rise from a chair without difficulty, squat fully, walk on his toes, walk on his heels, and had a normal stance. R. 186. Additionally, Dr. Ganesh found:

> Cervical spine shows full flexion, extension, lateral flexion, and full rotary movement bilaterally. No scoliosis or kyphosis or abonormality in the thoracic spine. Lumbar spine shows full flexion, extension, lateral flexion, and full rotary movement bilaterally. SLR negative bilaterally. Full ROM of shoulders, elbows, forearms, and wrists bilaterally. Full ROM of hips, knees, and ankles bilaterally. Strength 5/5 in the upper and lower extremities. No evident subluxations, contractures, akylosis, or thickening. Joints stable and nontender.

R. 186.

On August 19, 2004, Plaintiff had a Physical Residual Functional Capacity ("RFC") Assessment with B. Beavan, a medical consultant. R. 194. That assessment substantially mirrored what was reported by Dr. Ganesh, namely that all of Plaintiff's physical capabilities were intact and not severely limited. R. 190. Plaintiff was found to be capable of occasionally lifting fifty pounds, and frequently lifting up to twenty five pounds. R. 190. Additionally, Beavan reported that Plaintiff could stand and walk (with normal breaks) for about six hours in an eight hour workday, and exhibited an unlimited capacity to push and pull. R. 190. He was diagnosed with low back pain; Beavan stated that Plaintiff's "allegations are credible but not to the extent alleged." R. 192.

The next day, Beavan and Jane Stafford, Ph.D., jointly completed a mental RFC assessment. R. 195. Their assessment indicates that Plaintiff is mildly to moderately limited in his capacities of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. R. 195-196. The report concluded that Plaintiff's "allegations are credible but not to the extent or degree alleged. Based on the medical evidence in file, [Plaintiff] is able to perform simple, entry level work not closely with others." R. 197.

On March 7, 2005, Plaintiff's mother called Sara Cramer, the therapist that Plaintiff had been

regularly seeing for follow-up therapy at Mercy Behavioral.  R. 254.  Plaintiff's mother stated

Plaintiff was acting violently and threatening her.  R. 254.  Cramer called the police so they could

bring Plaintiff to Mercy Behavioral.  R. 254.  Plaintiff told Cramer on the phone that he had stopped

eating, taking his medication, and was breaking his possessions.  R. 255.  Later that day, the police

brought Plaintiff to Mercy Behavioral for a mental health evaluation.  R. 219-246.  He confirmed

that he had stopped taking his medications four days prior and that he had drank a few beers the day

before.  R. 220-24.  Cathy Anderson, a social worker, diagnosed Plaintiff with intermittent

explosive disorder, personality disorder, and depressive disorder.  R. 242.  She described his

behavior as angry, aggressive, and non-compliant.  R. 241.  After the evaluation, Plaintiff calmed

down, was released, and was directed to seek housing from the Department of Social Services

because his mother would not allow him to return to her house.  R. 243.

Plaintiff went to the Samaritan ER with his mother on October 30, 2005, where he was

described as depressed and agitated.  R. 320.  Plaintiff's mother stated that Plaintiff had made

suicidal statements and attempted to hit her.  R. 328.  Later that day, Plaintiff was discharged from

the hospital.  R. 328.

Plaintiff returned to the SMC ER on November 26, 2005, complaining of headaches, an

inability to sleep, depression, crying twice a day, and vomiting.  R. 346.  He was described as

"tearful."  R. 346.  Plaintiff was diagnosed with adjustment disorder and depressive disorder.  R.

360.

**B. Procedural History**

The relevant procedural history may be summarized as follows: Plaintiff protectively filed an

application for SSI on May 7, 2004, alleging his disabilities begin on his date of birth, December 24,

8

1967.  R. 50-52, 61, 372-73.[2]  On August 24, 2004, the Social Security Administration ("SSA")

denied his application after finding that he was not disabled under the rules.  R. 27-31.  On

September 28, 2004, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R.

33-36.  A hearing was held before ALJ Lawrence E. Shearer on May 3, 2005, at which Plaintiff,

represented by counsel, testified, as did a Vocational Expert, Jeanne Hambrick.  R. 369-422.  ALJ

Shearer denied Plaintiff's application on July 27, 2005.  R. 13-26.  Plaintiff timely filed a request for

review by the Appeals Council.  R. 11-12.  On September 25, 2006, the Appeals Council denied

Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the

Commissioner.  R. 5, 13.

Plaintiff, acting through counsel, commenced this action on November 22, 2006.  Dkt. No.  1.

The Commissioner filed an Answer on February 23, 2007.  Dkt.  No. 6.  Plaintiff filed a brief on

March 23, 2007.  Dkt.  No. 7.  Defendant filed a brief on May 4, 2007.  Dkt.  No. 9.  Both parties

seek judgment on the pleadings.


## III.   LEGAL STANDARD

### A.  Standard of Review

District courts have jurisdiction to review claims contesting a final decision by the

Commission of Social Security denying disability benefits.  42 U.S.C. § 405(g); 42 U.S.C. §

1383(c)(3).  In reviewing any such claim, a district court may not determine *de novo* whether an

individual is disabled.  42 U.S.C. § 405(g); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d

---

[2] Plaintiff concedes that under the rules, the earliest month that an applicant may be eligible
to receive SSI benefits is the month following the month that he files his application.  R. 372-73;
Pl.'s Br. at 1; <u>see</u> 20 C.F.R. § 416.335.

856, 860 (2d Cir. 1990).  Rather, it must defer to the Commissioner's determination unless the

correct legal standards were not applied or that substantial evidence in the record does not support

determination.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).  Thus, even where substantial

evidence supports an ALJ's conclusion, if "there is a reasonable basis for doubt whether the ALJ

applied correct legal principles, application of the substantial evidence standard to uphold a finding

of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her

disability determination made according to the correct legal principles."  Id.  Likewise, a reviewing

court should remand any case where an ALJ fails to set forth with sufficient specificity the crucial

factors underlying a determination such that the court is able to decide whether that determination is

supported by substantial evidence, and the case should be remanded.  Ferraris v. Heckler, 728 F.2d

582, 587 (2d Cir. 1984); see also Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (remand is

appropriate where a reviewing court is "unable to fathom the ALJ's rationale in relation to evidence

in the record, especially where credibility determinations and inference drawing is required").

　　　　"Substantial evidence" requires more than a mere scintilla of evidence, yet less than a

preponderance.  Sanchez v. NLRB, 785 F.2d 409 (2d Cir. 1986).  It has been defined as "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Poupore

v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Consolidated Edison Co. v. NLRB, 305 U.S.

197, 229 (1938)).  "To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts from

its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing

Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Ryan v. Astrue, 650 F. Supp. 2d 207,

216 (N.D.N.Y. 2009).  Where evidence is susceptible to more than one rational interpretation, a court may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Barnett v. Apfel, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998).

A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand.  42 U.S.C. § 405(g).  Granting judgment on the pleadings is appropriate where the material facts are undisputed and where a court may make a judgment on the merits with reference only to the contents of the pleadings.  Fed. R. Civ. P. 12(c); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).  Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard.  See Butts, 388 F.3d at 385; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Remand is most appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted).  By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose.  Rosa, 168 F.3d at 83; Parker, 626 F.2d at 235; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983).

**B.  Benefits Eligibility**

Under the Social Security Act, an individual is disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

11

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). The Social Security Administration has established a five-step sequential evaluation process to determine whether a claimant over the age of 18 is disabled under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520; see also Bowen v. Yuckert, 482 U.S. 137 (1987) (upholding the validity of this evaluation process); Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the burden of proof for the first four steps, and the Commissioner bears that burden in step five. See Bowen, 482 U.S. at 146; Berry, 675 F.2d at 467 (citations omitted).

20 C.F.R. § 404.1520 details the SSA's five-step analysis: at step one, the ALJ considers whether the claimant is currently engaged in substantial gainful activity.[3] If the claimant is not engaged in such activity, the ALJ advances to step two of the analysis and considers whether the claimant has a severe impairment meeting the "durational requirement"[4] and significantly limiting her physical or mental ability to perform basic work activities. In making this determination, the ALJ does not consider the claimant's age, education, or work experience. Assuming the ALJ finds the claimant has a severe impairment(s), the ALJ continues to step three and determines whether the impairment(s) meets or equals any of those listed in Appendix 1, Subpart P of Regulation No. 4 ("the Listings"). If the ALJ concludes that the claimant's impairment(s) does meet or equal one or

---

[3] 20 C.F.R. § 404.1572(a) defines "substantial work activity" as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(b) defines "gainful work activity" as "the kind of work usually done for pay or profit."

[4] The impairment must either be expected to result in death or must last for, or be expected to last for, a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

12

more of the Listings, the claimant is deemed disabled.  If the claimant's impairment(s) does not

meet or equal one of the Listings, the fourth step of the evaluation requires the ALJ to assess

whether, despite the claimant's severe impairment, the claimant's residual functional capacity

("RFC")[5] allows him to perform his past work.  If the claimant is unable to perform his past work,

the fifth step asks the ALJ to determine, in light of the claimant's RFC and other vocational factors

such as age, education, and work experience, whether the claimant could perform other work that

exists in significant numbers in the national economy.  20 C.F.R. § 404.1520; 20 C.F.R. § 404.1560;

see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).


## IV.   DISCUSSION

### A.  The ALJ's Findings

        In determining that Plaintiff is not disabled, the ALJ made the following findings: 1)

Plaintiff had not engaged in substantial gainful activity during the relevant period; 2) Plaintiff's

degenerative disc disease/degenerative joint disease and personality disorder/intermittent explosive

disorder are "severe" impairments; 3) Plaintiff does not have an impairment or combination of

impairments that meets or medically equals one of the Listings; 4) Plaintiff's allegations regarding

his limitations are not totally credible; 5) Plaintiff has the RFC to perform less than the full range of

medium work;[6] 6) Plaintiff is unable to perform any of his past relevant work;7) Plaintiff is a

---

        [5] RFC is defined as the most a claimant can do after considering the effects of all his or her medically determinable physical and mental limitations, including those not deemed "severe."  See 20 C.F.R. § 404.1545; SSR 96-8p.

        [6] The ALJ wrote that Plaintiff has the RFC to perform "less than the full range of *light* work" and refers back to the text of his discussion for a detailed function by function description.  R. 25. As discussed below, the text of the ALJ's decision as well as finding number 10, clearly indicates

"younger individual"; 8) with a "limited education" under the rules; 9) the issue of transferability of skills is moot; and 10) there are a significant number of jobs in the national economy that Plaintiff is capable of performing. R. 25.

In reaching his conclusion about Plaintiff's RFC, the ALJ found that "the evidence fails to establish that Plaintiff's pain is so severe and intractable as to prevent the performance of all work activity," R. 22, and that Plaintiff's allegations are only partially credible because " . . . the lack of objective evidence and clinical findings in the record are out of proportion to the claimant's subjective complaints . . . " R. 22. The ALJ also based his assessment on internal inconsistencies in Plaintiff's testimony and inconsistencies between that testimony and Plaintiff's prior statements to his treating sources. R. 22. Additionally, in assessing Plaintiff's RFC, the ALJ relied upon State agency consultative physical and mental examinations of Plaintiff. R. 22-23.

Plaintiff asserts that the ALJ improperly failed to afford controlling weight to the opinion of Plaintiff's treating physician, Dr. Littell, and thus improperly evaluated Plaintiff's RFC. Pl.'s Br. at 11. Further, Plaintiff objects to the ALJ's finding at step 2, claiming that in spite of the low threshold required to qualify as a "severe" impairment, the ALJ failed to find that Plaintiff's herniated disc and borderline mental retardation were severe conditions. Id. at 16. Third, Plaintiff asserts there was not substantial evidence for the ALJ to conclude that significant work existed in the national economy which Plaintiff could perform. Id. at 20. Last, Plaintiff asserts that the ALJ failed to properly evaluate Plaintiff's credibility. Id. at 22.

**B. The ALJ Properly Evaluated the Treating Physician's Opinion**

_____

that the ALJ found Plaintiff to possess the RFC to perform "less than the full range of medium work."

A treating physician's opinion concerning the nature and severity of an impairment is entitled to controlling weight if it is supported by laboratory and diagnostic techniques and is not inconsistent with other substantial evidence.  Schisler v.  Sullivan, 3 F.3d 563, 567 (2d Cir. 1993); 20 CFR 416.1527(d)(2).  Even where an ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must evaluated that opinion in light of several factors: examining relationship, treatment relationship, length and frequency of treatments, supportability, consistency, specialization, and any other factor which tends to support or contradict the opinion.  20 CFR 416.1527(d)(2)-(d)(6).  Additionally, if the treating physician's opinion is not given controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist."  20 CFR 404.1527(f)(ii).

Plaintiff claims that the ALJ, in reaching his determination regarding Plaintiff's RFC, should have given controlling weight to the opinion of Plaintiff's treating physician, Dr. Littell, Ph.D., because her conclusion that Plaintiff was "unable to work at this time," R. 169, was based upon her diagnoses of intermittent explosive disorder, dysthymic disorder, and her findings of Plaintiff's limited social and mental skills.  Pl.'s Br. at 11.  Further, Plaintiff contends that Dr. Littell's opinion is supported throughout Plaintiff's medical record by various treating sources and is not inconsistent with other treating sources.  Id. at 11-12.  Yet, rather than give the treating physician's opinion controlling weight, Plaintiff alleges the ALJ improperly failed to even consider that opinion.  Id. at 13-14.  Finally, Plaintiff asserts that the ALJ's determination is unclear because while he found Plaintiff can perform medium work in the body of his decision, R. 23, he also found Plaintiff was capable of "less than the full range of light work," R. 25, in Finding #5 of his decision.

15

Id. at 20.

The Commissioner argues that the ALJ's decision is supported by the opinions of State medical consultants, which constitute substantial evidence for the ALJ's decision. Def.'s Br. at 15-16. Further, the Commissioner contends that Dr. Littell's opinion is inconsistent with parts of the record and is, therefore, not entitled to controlling weight. Id. at 17.

This Court finds that the ALJ properly evaluated the treating physician's opinion. First, contrary to Plaintiff's assertion, the ALJ expressly considered reports by Dr. Littell in assessing Plaintiff's RFC. R. 23. He then gave reasons why this report was not controlling, namely, that Dr. Littell's report and suggestion that Plaintiff was "unable to work at this time," see R. 169, was made in mid-2004, shortly following Plaintiff's hospitalization and during a period when Plaintiff was engaged in marijuana use. R. 22. The ALJ noted that this report was inconsistent with more recent notes, which reflected improvement in Plaintiff's mood and symptoms so long as he was compliant with his medication. R. 22. This finding is supported by substantial evidence in the record, including progress notes made during Plaintiff's evaluations at Mercy, see, e.g. R. 260-268 (noting improvements in Plaintiff's condition), and by State agency consultants,[7] see, e.g., R. 195-212, 179-83. The ALJ noted the discrepancies between Dr. Littell's earlier evaluation and those made subsequently; among the latter was a mental RFC assessment signed by Jane Stafford, Ph.D. and dated August 23, 2004, which found Plaintiff able to work. R. 197. Furthermore, Dr. Littell, in a more recent Medical Questionaire dated June 23, 2004, did not restate her assessment that Plaintiff

---

[7] State agency medical consultants are deemed qualified experts in the field of social security disability. As such, an ALJ may rightfully considered their opinion. 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2); see also Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing Shisler v. Sullivan, 3 F.3d 563, 567-68 (2d Cir. 1993).

is unable to work.  Instead, she noted the significant mental and physical impairments that Plaintiff continued to endure.  She also reported that Plaintiff showed "no difficulty with job performance," and she stated that he was able to maintain activities of daily living, including performing work on cars.  R. 175.

In addition to the inconsistent medical notes regarding Plaintiff's capacity, Plaintiff offers no proof that Dr. Littell ever opined that Plaintiff's condition would prevent him from working for the 12-month duration required under the regulations.  See 20 C.F.R. § 404.1509.  Accordingly, the Court finds that the ALJ's conclusions and rationale for not adopting Dr. Littell's opinion are express and amply supported.  The Court finds no basis for disturbing them.

Regarding the inconsistency between the ALJ's finding that Plaintiff has the RFC to perform less than the full range of medium work in the body of his decision, and less than the full range of light work in the findings section, this Court finds that the ALJ clearly meant that Plaintiff has an RFC allowing him to perform less than the full range of medium work.  That conclusion finds support in the body of the ALJ's decision and asserted to in his conclusion.  R. 23-24.

**C.  The ALJ Found the Plaintiff's Impairments Were Severe.**

The second step of the SSI review process is to determine whether the claimants impairments are "severe."  20 C.F.R. §§ 404.1520(c); 416.920(c).  An impairment is severe if it causes more than minimal functional limitations. 20 C.F.R. § 416.924(c).  The severity analysis, which does not take age, education, or work experience into account, see 20 C.F.R. § 416.920(c), is meant only to "screen out *de minimis* claims."  See Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) (citations omitted).

Plaintiff contends that the ALJ erroneously failed to qualify Plaintiff's impairments as

severe.  Pl.'s Br. at 16.  As to Plaintiff's back condition, this is simply not true.  The ALJ found that

Plaintiff's back condition and personality disorders were severe impairments, but concluded that

they did not meet or medically equaled any of the Listings.  R. 20, 25.

Plaintiff next argues that the ALJ failed to consider his borderline mental retardation as a

severe impairment.  Pl.'s Br. at 18.  In his Brief, Plaintiff points to a report, R. 182, by Dr. Shapiro,

Ph.D., a consultative physician, which notes "AXIS II: R/O Borderline Intellectual Functioning."

Id.  Plaintiff also cites numerous pieces of medical evidence that indicate Plaintiff's limited social

and intellectual capacities.  Id.  Defendant disputes the existence of this impairment, arguing none of

Plaintiff's medical sources diagnosed him with "borderline mental retardation."  Def.'s Br. at 14.

It is the claimant's responsibility to identify and provide evidence establishing an

impairment as well as severity.  20 C.F.R. §§ 404.1512(c), 416.912(c); see Nelson v. Astrue, No.

5:09-CV-0909, 2010 U.S. Dist. LEXIS 90689, at *10 (N.D.N.Y. Aug. 12, 2010); see also, e.g., Gray

v. Chater, 903 F. Supp 293, 297 (N.D.N.Y. 1995) (citing Rivera v. Schweiker, 717 F.2d 719, 722

(2d Cir. 1983)) .  Plaintiff did not allege mental retardation when he applied for benefits, R. 72, nor

in any of his subsequent requests for agency review.  He did not testify as to this impairment at the

hearing in front of the ALJ.  This Court is not prepared to determine that the ALJ erred in failing to

discuss an impairment that Plaintiff never identified.  See Nelson, 2010 U.S. Dist. LEXIS 90689, at

*10.  The Court is particularly reluctant to do so given that the main source Plaintiff now cites as

evidence of such impairment is a cryptic notation in Dr. Shapiro's report.  It is not clear what Dr.

Shapiro meant when she noted "R/O Borderline Intellectual Functioning," nor is it apparent that she

diagnosed Plaintiff as suffering from borderline mental retardation.[8]  Moreover, Plaintiff has not

_____

[8] Defendant's Brief suggests that the abbreviation R/O signifies "rule out."  Def.'s Br. at 5.

previously suggested that he ever received such a diagnosis or suffered from this impairment.  None of Plaintiff's other medical sources made a diagnoses of borderline mental retardation or noted that he lacked the ability to follow simple instructions.  In fact, Dr. Shapiro, the main source underlying Plaintiff's argument, explicitly reported that Plaintiff is capable of following such instructions, completing simple and some complex tasks, learning new tasks, and maintaining concentration.  R. 182.  Given these circumstances, the Court finds no basis to remand on this issue.

### D. The ALJ Posed Accurate Hypotheticals to the Vocational Expert and Responded Appropriately

Plaintiff argues that the opinion of Jeanne Hambrick, the Vocational Expert ("VE") testifying at Plaintiff's administrative hearing, cannot provide substantial evidence for the ALJ's finding that jobs exist in significant numbers in the national economy which Plaintiff could perform.  Pl.'s Br. at 20.  Plaintiff contends that this is so because the hypothetical posed to the VE was inaccurate, as it was based on an erroneous RFC determination.  For the reasons discussed above, the Court finds that the RFC determination forming the basis of the ALJ's hypothetical was accurate and supported by substantial evidence in the record.  To the extent that Plaintiff's objection to the ALJ's finding that significant work exists in the national economy that Plaintiff is capable of performing depends upon a premise of an erroneous RFC, his argument is without merit.

Plaintiff additionally contends that the ALJ excluded parts of the VE's testimony from his evaluation.  Id. at 21-22.  Plaintiff argues that the ALJ erred by failing to comment upon and make findings regarding each of the hypotheticals to which the VE responded.  Specifically, Plaintiff asserts that the ALJ failed to respond to the VE's discussion regarding the effect that Plaintiff's lack of focus, frequent hospital visits, and inability to take criticism would have on Plaintiff's ability to

perform work.  Plaintiff asserts that the medical evidence suggests that Plaintiff's fits squarely into the alternative hypotheticals to which the VE responded, hypotheticals wherein the suggested limitations were found by the VE to preclude employment.  The ALJ's failure to recognize that Plaintiff's medical history is consistent with these alternative hypotheticals and his failure to analyze Plaintiff's ability to perform work accordingly was, allegedly, an error.

The ALJ, not the vocational expert, is responsible for determining, based on the evidence in the record, what physical limitations Plaintiff suffers.  See Dumas v. Schweiker, 712 F2d 1545, 1554 n.4 (2d Cir. 1983).  The Court has already determined that the ALJ's findings in this regard are supported by substantial evidence.  The ALJ is not required to defer or necessarily respond to a VE's assessment where that assessment is based on limitations that the ALJ ultimately discounts based on evidence in the record.  Plaintiff's contrary contention does not afford a basis for overturning the ALJ's determination that work exists in the national economy that Plaintiff is capable of performing.

### E. The ALJ Assessment of Plaintiff's Credibility is Supported by Substantial Evidence

Plaintiff contends that the ALJ's credibility assessment was flawed because he ignored Plaintiff's subjective complaints and failed to adequately document his analysis.  Pl.'s Br. at 23. "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999).  An ALJ must provide specific reasons for his credibility finding; this rationale must be sufficiently

20

specific to make clear to the claimant and reviewing courts what weight the ALJ afforded to the claimant's statements and the reasons for that weight.  See SSR 96-7p; Seaton v. Astrue, No. 5:06-CV-0756, 2010 WL 2869561, at *10 (N.D.N.Y. July 19, 2010) (Kahn, J.).  The ALJ's credibility assessment is entitled to great deference if it is supported by substantial evidence.  Murphy v. Barnhart, No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citations omitted).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529; see Seaton, 2010 WL 2869561, at *10-11.  The ALJ must first determine whether, based upon the objective medical evidence, a claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. § 404.1529(a).

Second, if the medical evidence establishes the existence of such impairments, the ALJ need only evaluate the intensity, persistence, and limiting effects of the claimant's symptoms and determine the extent to which they limit that claimant's capacity to work.  See 20 C.F.R. § 404.1529(c).  If the objective evidence does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the claimant's subjective complaints by considering the record in light of the following factors: (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3); SSR 96-7p.

Here, the ALJ adequately followed the prescribed 2-step analysis in assessing Plaintiff's

21

credibility.  First, the ALJ listed specific reasons for his finding Plaintiff's testimony to be only partially credible, listing instances where Plaintiff's testimony was at odds with statements Plaintiff gave to his treating sources or where his testimony was internally inconsistent.  R. 22.  The ALJ acknowledged that Plaintiff's medical impairments could reasonably be expected to "produce some degree of pain and discomfort."  However, the ALJ found "[t]he lack of objective evidence and clinical findings in the record [] out of proportion to [Plaintiff's] subjective complaints and do not support[] a conclusion that the limitations are of an intensity, frequency, or duration as to preclude the performance of all work activity."  R. 22.  The ALJ supports this determination by referencing the medical record and evaluating Plaintiff's complaints in light of the above listed factors.  R. 22-23.  His analysis includes evidence of Plaintiff's ability to engage in daily activities such as driving and sitting that surpass that which Plaintiff testified to; notes the frequency and severity of his anger outbursts and other impairments; discusses aggravating factors such as marijuana use and alcohol consumption; notes that his symptoms improved when he was compliant with his medical regime; etc.  R. 18-23.  In short, the ALJ's credibility determination finds ample support in the record and shall not be disturbed.

## V.    CONCLUSION

Given the above discussion, the Court finds no reversible error.  Accordingly, it is hereby

**ORDERED**, that Defendant's Motion on the pleadings is **GRANTED** and the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Motion on the pleadings is **DENIED**, and his Complaint is **DISMISSED**; and it is further

22

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:       September 15, 2010
             Albany, New York

Lawrence E. Kahn
U.S. District Judge